UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-23064-EFD

DMITRII SHITOV,

       Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

       Defendants.



FILED BY ____ D.C.

SEP 29 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Plaintiff Dmitrii Shitov ("Plaintiff"), *pro se*,[1] responds to the Defendants' motion to dismiss [ECF No. 13] as follows.

### I.    INTRODUCTION

Plaintiff is a Russian national who properly and timely filed Form I-589, Application for Asylum and Withholding of Removal ("Asylum Application") with U.S. Citizenship and Immigration Services ("USCIS") on March 3, 2023. *See* Compl. ¶ 1. This action is brought as a result of Defendants' failure to adjudicate Plaintiff's Asylum Application within the statutory period of 180 days pursuant to 8 U.S.C. § 1158(d)(5)(A)(iii). Plaintiff's Asylum Application remains pending more than two years and six months (more than 925 days) as of the date of this response and will likely remain unadjudicated absent court intervention. This action is not an attempt to cut the line but rather ensure that Defendants operate within the deadlines mandated by Congress.

---

[1] Per Florida Bar Ethics Opinion 79-7, the undersigned informs the Court that while he proceeds in this matter *pro se*, this response was prepared with the assistance of counsel.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his Asylum Application on March 3, 2023 and then on March 31, 2023 had his biometrics taken at a USCIS facility. *See* Compl. ¶¶ 17–18. After waiting beyond the statutory 180-day period, Plaintiff began to request assistance of elected officials in obtaining his asylum interview with USCIS. For example, he requested assistance from Senator Marsha Blackburn in October 2024 and received information that the office schedules asylum interviews based on its resources. *See id.* ¶¶ 27–28. Further, on March 20, 2025, Plaintiff requested assistance from Senator Ashley Moody on expediting his Asylum Application, whose office informed him that USCIC denied his request to expedite the interview process. *See id.* ¶¶ 19–20. On February 20, 2025, Plaintiff submitted a similar request for assistance to Senator Rick Scott, whose office informed him that the Miami Asylum Office schedules asylum interviews as soon as possible based on its resources. *See id.* ¶¶ 20–21. Plaintiff received a similar response from the office of Representative Diana Harshbarger. *See id.* ¶¶ 25–26.

In February 2025, Plaintiff requested to be placed on the short notice list with the Miami Asylum Office, *see id.* ¶ 31, and on March 6, 2025, Plaintiff was told by USCIS that his request for an expedited interview was denied, *see id.* ¶ 30. As a result of these delays, Plaintiff has suffered economic and other hardships. *See id.* ¶ 52.

On July 9, 2025, Plaintiff initiated this action by filing a complaint for mandamus relief (Count II) and violation of the Administrative Procedure Act ("APA") under 5 U.S.C. §702 (Count I). *See* Compl. Therein, Plaintiff alleges that his application has not been adjudicated within the statutory period of 180 days (which is pursuant to 8 U.S.C. § 1158(d)(5)(A)(iii)).

On August 19, 2025, the government filed a motion to dismiss Plaintiff's Complaint. [ECF No. 13]. Therein, it argued that Plaintiff fails to state a claim under Rule 12(b)(6) for his

APA claim and that the Court lacks subject matter jurisdiction under Rule 12(b)(1) for his mandamus claim. *Id.*

## III.   MEMORANDUM OF LAW

### A.  Legal Standard Under Rule 12(b)(6)

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pled factual allegations and determines whether they plausibly give rise to entitlement for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient "facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff makes a facially plausible claim when he pleads factual content from which the court can reasonably infer that a "defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Id.* at 664.

The plaintiff bears the burden of framing the complaint with sufficient facts to suggest that he is entitled to relief. *Twombly*, 550 U.S. at 556. Dismissal is warranted under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### B.  Legal Standard Under Rule 12(b)(1)

Rule 12(b)(1) applies to challenges to a court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of*

*Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

Challenges to "subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be either facial or factual." *JPMCC 2005-CIBC13 Collins Lodging, LLC v. Philips S. Beach, LLC*, 2010 WL 4317000 (S.D. Fla. Oct. 22, 2010) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). Like a Rule 12(b)(6) motion, a "facial attack" on the complaint requires the court merely to examine the complaint to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, with the allegations in the complaint taken as true. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *See Leatherman v Tarrant Cty. Narcotics Intelligence & Coordination* Unit, 507 U.S. 163, 164 (1993). In ruling on a factual attack on subject matter jurisdiction under Rule 12(b)(1), the court properly may consider "matters outside of the pleadings, such as testimony and affidavits." *Menchaca*, 613 F.2d at 511.

The government does not identify which attack it makes to Plaintiff's mandamus claim, but because it does not raise matters outside the pleadings, Plaintiff construes the motion to dismiss as a facial attack only.

## C. Argument

### 1. Count I – Violation of the APA

The APA authorizes suit by any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" includes the "failure to act." 5 U.S.C. § 551(13). As relevant here, the APA requires a federal agency to "conclude a matter presented to it" within "a reasonable time." 5 U.S.C. § 555(b). Consequently, under the APA, a reviewing federal court

"shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

When analyzing whether an agency's delay is unreasonable, some courts apply the six-factor test delineated in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*").[2] The Eleventh Circuit has not expressly adopted the *TRAC* factors.

While the government does not expressly reference the *TRAC* factors in its motion to dismiss, it does speak to the thrust of the factors when discussing the bases of Plaintiff's APA claim. [*See, e.g.*, ECF No. 13 at 3–5 (discussing the delay in processing the application, the consequences of the delay on Plaintiff's life/career, the requirements of Congress, etc., for processing applications).[3] To fully grapple with the government's motion, the Court would be required to analyze the *TRAC* factors. While the Eleventh Circuit has not expressly decided whether it is appropriate to consider those factors on a motion to dismiss, many district courts have determined that the fact-intensive inquiry is inappropriate at this juncture. *See Tikhonov v.*

---

[2] The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason,' (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, (4) the court should consider the effect of expediting delayed agency action on agency activities of a higher or competing priority, (5) the court should also take into account the nature and extent of the interests prejudiced by the delay, and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

*TRAC*, 750 F.2d at 80 (citations omitted)

[3] The government also argues that the INA does not provide a private right of action to enforce the timing mechanisms for application processing. However, the INA's "prohibition against a private right of action to enforce the timing requirements set forth in [s]ection 1158(d)(5)(A)" by itself "does not deprive the [c]ourt of subject matter jurisdiction here." *Fang Yan v. Dir. of L.A. Asylum Off. for the United States Citizenship & Immigr. Servs.*, 2023 WL 4053410, at *3 (C.D. Cal. June 16, 2023).

*Mayorkas*, 2024 WL 3327777, at *2 (S.D. Fla. Mar. 12, 2024) ("However, this Court finds that analysis of the *TRAC* factors is inappropriate at the motion to dismiss stage due to their fact-intensive nature."); *Abou Hala v. Chief, Immigrant Inv. Program Off.*, 2024 WL 4188350, at *6 (M.D. Fla. Sept. 13, 2024) ("At this procedural stage, the Court lacks sufficient information to evaluate the *TRAC* factors in its assessment of whether Defendants' delays in adjudication are unreasonable."); *Lammers v. U.S. Citizenship & Immigration Servs.*, 2021 WL 9408916, at *2–*3 (M.D. Fla. July 28, 2021) (declining to analyze the *TRAC* factors at the motion to dismiss stage due to "fact-intensive nature of unreasonably delay cases"); *Girges v. Sec'y, Dep't of Homeland Sec.*, 2022 WL 2774211, at *4 (M.D. Fla. June 8, 2022) (declining to apply the *TRAC* factors at motion to dismiss stage due to their fact-intensive nature); *Ignatova v. Jaddou*, 2023 WL 5611902, at *7 (S.D. Fla. Aug. 15, 2023), *report and recommendation adopted*, 2023 WL 5608433 (S.D. Fla. Aug. 30, 2023) (finding that at the motion to dismiss stage "an analysis of the *TRAC* factors is neither appropriate ... nor necessary.").

Other courts outside the Eleventh Circuit have come to the same conclusion. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."); *Savchuk v. Jaddou*, 2024 WL 4183468, at *4 (N.D. Cal. Aug. 20, 2024) ("Although the parties have briefed the *TRAC* factors and disagree whether there has been an unreasonable delay, the Court finds it inappropriate to conduct the fact-analysis at this stage."); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021) ("A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." (referencing *TRAC*, 750 F.2d at 80)).

This Court should deny the government's motion on procedural grounds because the issues raised therein would require the Court to delve into the fact-intensive issues presented concerning the agency's actions, the length of delay and its reasonableness, and the impacts of delay on Plaintiff. That said, should the Court consider the factual grounds raised in the government's motion to dismiss, which Plaintiff argues would be improper here, it should reach the conclusion that the *TRAC* factors support APA relief, and each of the appropriate factors is addressed below.[4] Should the Court conclude otherwise, Plaintiff should be permitted to provide additional factual support for his claim in an amended complaint.

### a. The government provides no evidence on the first *TRAC* factor, and the second favors Plaintiff.

Generally, the first and second *TRAC* factors are considered together. *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1288 (S.D. Fla. 2023). These two factors "get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. Sci. Pub. Interest v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). The first one—whether a "rule of reason" guides the agency—is the most important. *See In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004).

The first and second factors, in the I-589 context, require the Court to review the USCIS policy regarding asylum review scheduling. *Varol v. Radel*, 420 F. Supp. 3d 1089, 1097 (S.D. Cal. 2019). Aside from this being a factual inquiry, which should not be undertaken at the

---

[4] Plaintiff does not allege any facts to permit the Court to assess any allegations of bad faith or unfairness on the part of the government for the sixth factor. *See e.g.*, *Arab v. Blinken*, 600 F. Supp. 3d 59, 72 (D.D.C. 2022). But "the lack of plausible allegations of impropriety [for the sixth factor] ... does not alter the Court's analysis" one way or the other. *Thakker v. Renaud*, 2021 WL 1092269, at *8 (D.D.C. Mar. 22, 2021).

pleading stage, the government here provides no evidence as to its policy regarding asylum review or interview scheduling, forfeiting any argument that the first factor weighs in its favor. *Cf. Arabzada v. Donis*, 725 F. Supp. 3d 1, 14 (D.D.C. 2024) (wherein the government explained its last-in-first-out policy for pending asylum applications based on government reports).

Next, the Court should conclude that the second factor favors Plaintiff, as Congress has provided a clear timetable for the processing of asylum applications under 8 U.S.C. §§ 1158(d)(5)(A)(ii)-(iii). The statutory guidelines provide a clear expectation that the initial interview should commence within 45 days, with a final adjudication to be completed within 180 days. Thus, this factor weighs in Plaintiff's favor.

Further, while the government is correct that courts have granted motions to dismiss in cases where there has been a longer delay than Plaintiff's, the statutory mandate of Congress is clear here, and either way, the reasonableness of the government's delay in processing Plaintiff's Asylum Application is a factual inquiry, unsuited for resolution at the pleading stage.

### b.  The third and fifth *TRAC* factors weigh in Plaintiff's favor.

Courts analyze *TRAC* factors three and five together, looking to the possible effects a delay has had on a plaintiff's health and welfare and to the "nature and extent of the interests prejudiced by delay." *See TRAC*, 750 F.2d at 80; *see also, e.g., Mahmood v. U.S. Dep't of Homeland Sec.*, 2021 WL 5998385, at *8 (D.D.C. Dec. 20, 2021). Here, Plaintiff alleges that he faces career and economic insecurity as a result of the processing delays. These delays have caused harm to Plaintiff. While proceeding *pro se*, Plaintiff provided some background information about these harms in the complaint, Plaintiff has experienced other harms because of the delay, which, if the Court is inclined to grant the motion, should be permitted to be alleged by amendment. Nevertheless, the harms, as alleged, weigh slightly in Plaintiff's favor. *See*

*Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at \*8 (D.D.C. Feb. 7, 2024) (finding that third and fifth factors "slightly favor[ed]" group of plaintiffs who claimed, among other issues, that they suffered "stress[ ] and anxiety" due to their visa delay).

### c. The government does not provide support for the fourth *TRAC* factor.

The fourth factor asks courts to consider "the effect of expediting delayed action on agency activities of a higher or competing priority." *See TRAC*, 750 F.2d at 80. Here, the government relies on cases indicating that it is inappropriate to move a litigant to the front of a processing queue simply because they have filed suit. [ECF No. 13 at 5]. But the government has not explained how USCIS processes its asylum applications or whether there really is a "queue" for the applications, or considerations that may make the processing of applications move in flux as opposed to a true last-in, first-out policy.

\*\*\*

For all these reasons the government's motion to dismiss Count I under the APA.

### 2. <u>Count II – Mandamus Relief</u>

The Mandamus Act provides jurisdiction to district courts to compel officers to perform duties owed to the plaintiff. *See* 28 U.S.C. § 1361. For a district court to provide relief under the Mandamus Act, a plaintiff must be able to affirmatively demonstrate that (1) they have a clear right to the relief requested; (2) the defendants have a clear duty to perform the act in question; and (3) no other adequate remedy is available to the plaintiff. *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002); *Serrano v. United States AG*, 655 F.3d 1260, 1263 (11th Cir. 2011). The government seeks dismissal of the claim based on the first two factors. [ECF No. 13 at 6]. While these factors are related, *see Osechas Lopez*, 2023 WL 152640, at \* 3, each is addressed in turn.

First, to determine whether a plaintiff has a clear right to the requested relief, courts look to look to the statute in question to determine what Congress directed. *See United States v. Markgraf,* 736 F.2d 1179 (7th Cir. 1984) (noting that when determining Congressional intent courts look to "the language of the statute; the legislative history; and the interpretation given by the administrative agency charged with enforcing the statute."). Here, pursuant to 8 USC § 1158(d)(5)(A)(iii), "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed; . . ." Additionally, pursuant to subsection (ii), "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed; . . ." In 8 USC §§ 1158(d)(5)(A)(ii) & (iii) Congress used the term "shall," which removes discretion from USCIS in terms of timeframe in which the agency must act. Indeed, the term "shall" denotes a clear directive, a command, as opposed to the terms "may" or "in his discretion" used in a statute such as 8 U.S.C. § 1255(a). *See, e.g., Miller v. French,* 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) ("The stay is 'automatic' once a state defendant has filed a § 3626(b) motion, and the statutory command that such a motion 'shall operate as a stay during the [specified time] period' indicates that the stay is mandatory throughout that period of time."); *Kuhlmann v. Wilson,* 477 U.S. 436, 449 n. 11, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) ("Sensitivity to the interests implicated by federal habeas corpus review is implicit in the statutory command that the federal courts 'shall ... dispose of the matter as law and justice require.' "); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ("The words chosen by Congress [" 'shall pay to the seaman' the sums specified 'for each and every day during which payment is delayed' "], given their plain meaning, leave no

room for the exercise of discretion either in deciding whether to exact payment or in choosing the period of days by which the payment is to be calculated."); *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 168–72, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

<u>Second</u>, USCIS has a duty to adjudicate Plaintiff's Asylum Application, including scheduling his interview. While the power to confer citizenship or the like rests solely with Congress, it has delegated to the Executive Branch administration of immigration processes. *See, e.g., INS v. Pangilinan*, 486 U.S. 875, 883–84, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988). While a this court does not have the authority to tell USCIS to grant Plaintiff's Asylum Application (which is not the relief sought here), it does have the power to require the Executive to carry out Congress' statutory commands. Here, Congress gave USCIS the power and responsibility to administer the asylum process in the United States including the duty to adjudicate asylee's applications. *See Iddir*, 301 F.3d at 500. Accordingly, this Court has the power to compel the government to process Plaintiff's Asylum Application and interview as the government has exceeded the statutory time frame in which it must act.

The government, however, argues that Plaintiff cannot meet these factors despite the Congressional mandate requiring USCIS to act on Plaintiff's Asylum Application within a prescribed time frame. To support its argument, the government relies on *Sabah v. Emmel*, in which Judge Gayles denied the plaintiff's claim for mandamus relief under 8 U.S.C. § 1571(b) for a I-526 petition, because that statute did not compel the government to act within a certain time frame. Unlike 8 USC § 1158(d)(5)(A)(ii) and (iii) for I-589 applications, which both use the word "shall" with respect to processing asylum applications and interviews, section 1571(b) uses the term "should," which is permissive, and not mandatory. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008); *see Osechas*, 2023 WL 152640, at *3. As explained above, in

collecting cases, "shall" means shall, not "should," making mandamus relief is appropriate here in the I-589 context.

Further, to the government's point that there is no clear right on the "pace of adjudication" of the Asylum Application, Plaintiff does not disagree with that assertion. Plaintiff is not seeking a judicial decree as to how USCIS places or queues asylum applications. No. Plaintiff is simply asking the Court to order USCIS to complete the acts it was required to do within 180 days per Congress's clear mandate.

Finally, while the government argues that appropriate relief under the APA forecloses mandamus relief, [*see* ECF No. 13 at 7 (citing *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011)), plaintiffs are permitted, at the pleading stage, to raise alternative theories of relief under Rule 8(d). Thus, whether Plaintiff's APA claim is cognizable should not affect Plaintiff's claim for mandamus relief.

## CONCLUSION

For the foregoing reasons, Plaintiff Dmitrii Shitov respectfully requests that the Court deny the government's motion to dismiss. To the extent the Court grants the motion, Mr. Shitov should be permitted leave to file an amended complaint, particularly to the extent the Court determines it appropriate to consider the *TRAC* factors, for which additional factual allegations by Plaintiff could prove dispositive as to how those factors are weighed.

Dated: 9/29/2025.

Respectfully submitted,

Dmitrii Shitov. *pro se*
Prepared with Assistance of Counsel

12